The Honorable the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable the United States Court of Appeals for the Fourth Circuit are admonished to draw a line, give their attention, for the court is now sitting. God save the United States and this Honorable Court. We have two cases on for hearing this morning. Versus 23-6544. United States v. Osman. Mr. Attias. Thank you, Judge Diaz. May it please the court. A jury convicted the defendant of committing a crime of the high C's. But about 13 years into the defendant's mandatory life sentence for piracy, the district court granted his motion for compassionate release and reduced his sentence to time served. Because that decision is procedurally and substantively flawed, this court should reverse. So you mentioned the life sentence, so I'll just ask this. I think the government concedes that just because it's a mandatory life sentence doesn't mean you can't grant compassionate release, right? That's right. Okay. I can, I can turn to that. I mean, that was No, but you don't dispute, like, so you said mandatory life sentence, and one response would be how can you grant compassionate release from a mandatory life sentence? But the government's objection isn't that it's literally impossible to grant compassionate release. It's that the district court had abused its discretion in granting this motion for compassionate release. That's correct. I think what happened here, I mean, and this is the fifth factor the district court relied on in releasing the defendant, two of the factors it relied on were the fact that Can you move that mic a little closer to you? the fact that nothing was stolen and nobody was injured on the, on the Ashland. Now the district court construed those facts as being both changed circumstances and also extraordinary and compelling. They're obviously not changed circumstances because they're just the facts of the case that happened about a decade ago. But they're not extraordinary and compelling, and I think this gets to your Honor's question. The district court didn't explain why it thought these facts were extraordinary and compelling. But there's a, there's a similarity between the bottom line conclusion the district court reached and the history of this litigation as well as exactly what the defendant had been arguing that's really hard to miss. And the defendants have been lodging a policy challenge to the statute, to the piracy statute since the onset. The challenge to the definition of piracy was premised on the notion that piracy cannot encompass acts of violence that don't result in theft of property. And the challenge to this, to the penalty was the Eighth Amendment challenge, which is that. How is that relevant here? It's relevant here because the defendant in his, well, in both compassionate release motions, in his first and second motion, argued, and this is his only, the defendant's only real claim to extraordinary and compelling reasons in a second motion, was that the disproportion, this is, these are his own paraphrasing, the disproportion between the conduct found by the jury, i.e. an act of violence that didn't result in theft of property or injury to persons, coupled with the penalty that Congress affixed to that, to conduct like that, is itself extraordinary and compelling. And that's not, that's not to say that you couldn't reduce a sentence for someone who has a mandatory minimum, but looking at the sheer existence of a mandatory minimum, that's just Congress's choice coupled with Congress's decision to define piracy in a certain way, and this Court's decisions construing that definition in a certain way, can't possibly be a basis for a compassionate release, I think, to credit that type of argument and the defendant. Your brief mentions the Eighth Amendment issue, and I agree, this Court said this is not an Eighth Amendment violation, but, I mean, by definition, a case where a district court is considering compassionate release, the sentence doesn't violate the Eighth Amendment, right? Because if the sentence violates the Eighth Amendment, we're literally never getting to the compassionate release question. I'm sorry, I'm not sure I understood your question. So the government dwells on the fact, look, that he argued that this violates the Eighth Amendment, this Court reversed, said it doesn't violate the Eighth Amendment, and the government says, well, that proves that this was unjustified, and candidly, like, that just seems to be like a conceptual error, because it seems to be, by definition, if the district court is considering a compassionate release motion, the sentence doesn't violate the Eighth Amendment. So every time the district court grants a compassionate release motion, it's going to be of a sentence that doesn't violate the Eighth Amendment, because if the sentence violates the Eighth Amendment, there's no way that the defendant can't be incarcerated that long. Sure, but I think... So what's the relevance of the fact that this sentence didn't violate the Eighth Amendment to the compassionate release question? Well, it's not that it didn't violate the Eighth Amendment. It's that when the defendant is attempting to repackage claims that he's already lost, the crux of his claim was nobody was injured. That's the challenge. But is that a preclude... I don't understand what that argument is. Yes, criminal defendants don't want to go to jail, and they want to spend as little time as possible in jail, and they make all available arguments for why they shouldn't spend as long in jail. We don't hold it against the defendant that he made an argument that lost in assessing whether we should reverse an argument that he won. Right. So there are certain arguments that go to the validity of the sentence and the conviction. And this court's decision, for example, in Ferguson, tells us that defendants can't lodge attacks to their sentence and conviction, challenges that sound in habeas or other types of challenges, through the mechanism of compassionate release. So a defendant could say, what my defense attorney did was, you know, his performance was horrendous. That's an ineffective assistance claim. Or he could say, actually, his performance is terrible. That's extraordinary. It's the same claim, and it's the same thing here. I don't think... Because, see, that's the part where you lose me. An Eighth Amendment claim is that it is unconstitutional to imprison me or categorize me that long. A compassionate release claim is, under all the facts and circumstances of the case, it's unjust to... Those are, to strike me, as completely different claims. Right. So, I mean, I think this court's decision in Said 2 explained that the punishment for piracy is not disproportionate, notwithstanding the fact that nothing... Yes, it doesn't violate the Eighth Amendment. Right. And so, I mean, maybe we could find daylight between cruel and unusual and extraordinary and compelling, but I think it's the... And Ferguson tells us it's the substance that controls, not how we label the claim. So if the claim is premised on the fact that nothing was stolen and no one was injured, to us, and the defendant pretty much explicitly said that in his first motion, I mean, he asked the district court in his first compassionate release motion to re-sentence him consistent with its decision in the district court's Eighth Amendment order. I mean, that's not really our reading. That's what the defendant himself said. Can I ask you a broader conceptual question? I mean, day in and day out, this court hears arguments in which district courts impose sentences or deny compassionate release. And day in and day out, the government tells us that district courts get tons of discretion. And just because we might have made a different decision or found the fact... I mean, look, I was a former government lawyer. I get this. But this is the government's bread and butter. Sentencing is super discretionary, and there's all kinds of judgment calls. And the government constantly tells us, just because we're skeptical of what the district court did, just because we might have done something differently, that does not mean you reverse a district court. And here we have a situation where the district court actually ruled for a defendant, and now you want us to hold this in abusive discretion. I mean, would you help me with the apparent incongruity of that? Well, I don't... I'm not sure it's incongruous. I mean, the abusive discretion standard is obviously deferential, and district courts have a lot of latitude. And it's very hard to overturn that generally, and we benefit from that in 90-plus percent of the cases. But obviously, abusive discretion standard, it's not a rubber stamp, and it's not toothless. So can you go down the list of places where you think Judge Jackson abused his discretion? Sure. So, I mean, the first factor, the district... Well, the fifth factor would have been, in our view, the consideration of nothing being stolen and no one being injured. But we've already addressed that. But I'll start from the top. I mean, the first factor Judge Jackson considered in releasing the defendant was the fact it had to do with the geopolitical situation in Somalia. Judge Jackson said that the conditions that engendered piracy had shifted dramatically. The piracy was a thing of the past. Is there any evidence of that in the record? I don't believe there's anything in the record to support the fact that the conditions that engendered piracy have shifted dramatically. I don't think there's any record, in fact, also, in like... And even if that's true, would it have been appropriate, if not necessary, for the district court judge to consider the issue of general deterrence, the fact that even if it was true that piracy might no longer have been an issue in Somalia, it's also true that it remains a problem around the world, right? That's absolutely right. It's a big problem on the other coast of Africa, on the West Coast. It's a big problem in South America. And as we pointed out... That would show that the Navy's efforts, like in this case, in the Sea of Aden, I'm sorry? That would show that the Navy's efforts, our efforts, like in this case, were successful. I agree. It's true. I agree. It doesn't mean that piracy is less of a crime. I absolutely agree. I mean... You lay out, the government always does when you get these cases, this is what, the fifth time that you've been up here on it or something, what a terrible crime it is. And that's the reason that Congress says it's, you get life, there's no discretion. And before they put life in there, it was death. Until 1919, if you got convicted of piracy in American court, you got the death penalty. They changed it in 1919, I believe it was, to life. And that's the way it's been for the last 100 years. It's uniformed pretty much around the world. It's a crime against the whole world. That's right. And that's why it has universal jurisdiction. And to your Honor's point, I mean, one of the reasons why, in our view, reliance on the fact that piracy has declined sort of misses the point is because not only does the fact that piracy in that part of the area... Did Judge Jackson say, really, that the nature of the offense favored him? Judge Jackson said that because piracy was on the decline, he said it had all but ceased. Yes. And in another place, he said piracy had all but ceased, that the conditions had shifted dramatically, and that therefore the nature and circumstances of the offense weighed in favor of release. Didn't he say, I mean, suggest that the incentives that were in place at the time for this defendant to commit the crime were no longer in place, something like that. Is that right? He cited to some broad facts about Somalia between the 1990s and not really today. The scholarship he relied on stopped in 2015, which is another reason why some of the sources Judge Jackson relied on couldn't possibly tell us about today. Two of the sources are from 2007 and 2010, so that would be three years before the defendant's offense and the year of his offense. Obviously, they don't tell us what the condition of Somalia today is. But then, you know, he also then pivoted to some circumstances relating to this defendant, the passage of time and his behavior in prison, his family circumstances. And you express a concern that the judge simply failed to sort of mechanically divide the analysis by focusing first on things that might have been compelling in the first instance and then turning later to the 3553A factors. But do you really think it's that mechanical? I mean, inevitably, there's going to be some bleeding, so to speak, with respect to some of these factors depending upon the defendant. So I'm not sure that that necessarily was an abuse. I guess the question is, is there enough here really to justify, you know, releasing this defendant at this stage of his incarceration? Right. So I'll address the last part first, which is, I guess, the procedural question. I do think this, I mean, this court's precedent does say that courts are supposed to do two things in two steps. First, they have to find an extraordinary and compelling reason. And then, and only then, do they get to the sentencing factors. I think, and we're not advocating for an overly formulaic approach to it, although this court's precedent does say two steps. And I think there's a reason for that, which is that, I mean, this court in McCoy, for example, has explained that the extraordinary and compelling standard is a heightened one, and that it's reserved. It's not just redo 3553 and decide that if you were doing this again today, you might make a different decision. It's not that. It can't be that. I mean, then it would just be an overall resentencing statute. I think the defendant has to clear that heightened threshold first. And there's a reason for that. We're talking about things that are extraordinary, rare, uncommon, not the mine run, and things that are also compelling. So something that would force or impel a judge to release a defendant from prison. I think when you lump both facts, both prongs of the analysis into one, what you end up doing is you dilute the standard. And so what can happen, basically, is judges end up treating factors that are really quite ordinary as extraordinary. And I'll give the court an example of this. I mean, at the very end of the district court's opinion, the district court cites all the factors it had cited previously and says, cites a 3553 factor, and then says, and everything's extraordinary and compelling. One of those factors is the defendant's rehabilitation or his post-sentencing conduct. There's no question that the defendant's post-sentencing conduct is, on the whole, positive. He's taken a couple of classes. He's done well. He stayed out of trouble. But it's not extraordinary, not even close, not even the defendant viewed it as being extraordinary. There's an interesting citation to this court's decision in Martin and the district court's opinion, which is interesting because this is not a case where there was some, you know, Martin-esque mountain of mitigating evidence. And again, the defendant didn't even characterize his factors. It would weigh on the plus side of the ledger. But it's not extraordinary, not even close. He just took a couple of classes over a decade. There's nothing unusual about that. So that goes to the question of, well, why are the two inquiries separate? And I think there's a reason for that. It's because you first have to clear the heightened threshold, find an extraordinary and compelling reason, and then the district court can get to the sentencing factors. And those don't necessarily have to be extraordinary. And obviously, there'll be times where there'll be some overlap. But I do think there's a reason for keeping the two inquiries separate. I'll just briefly address the defendant's health claims, which we have not talked about yet. Sorry, while you have some time, could you tell me what do you think is the most analogous case where this court has reversed a district court's grant of compassionate release? I'm not familiar. I don't think this court has. Ever? I don't think this court has ever reversed a district court's grant of compassionate release. We had. I actually happened to handle it. That's why I know it. One case, Judge King, Your Honor, you were on the panel, United States versus Fareezy. It was a case involving a hacker who hacked on behalf of ISIS. We appealed Judge Brinkman's grant of release in that case. After oral argument, this court didn't reverse, but it remanded because in the meantime, the defendant had been convicted of other charges, and so this court remanded for the district court to reassess the defendant's motion in light of those new charges. I will say, if the court looks at the briefing there, that the arguments we made here and there are extremely similar. Both decisions involve the same type of what we characterize as arbitrary decision-making, saying X at time one and not X at time two with no relevant change in circumstances. I can provide the court with the case number. I just don't have it off the top of my head. All right. Thank you, counsel. Mr. Warder. May it please the court. Good morning, Your Honors. My name is Larry Woodward. I'm here on behalf of Mr. Osmond, and I urge this court to confirm Judge Jackson's grant of compassionate release. I'd like to start a little bit with what this case is not about. It is not about the Eighth Amendment. It is not about any of the decisions or opinions that this court has previously rendered in this case. I know this case has been up and down on a number of issues. Judge Jackson tried this case. Judge Jackson has lived with this case for 13 or 14 years. There's nobody, certainly in this district in the legal sense, that knows more about this case and this defendant than Judge Jackson. I'd say normally that would help you, but I'm not sure that that's super helpful for you here, because Judge Jackson's also been reversed multiple times. Well, yes, Your Honor, Judge Jackson has been reversed multiple times, but not on compassionate release. And I find it compelling that when this claim came before Judge Jackson in 2021, he rendered an opinion denying compassionate release, and the government apparently found that to be flawless, well thought out, no problems. And I would say this, Your Honor, and look, I... That was for him, right? That was the one you're talking about, what involved Osmond, right? Yes, sir. He initially denied it. He denied one for one of his co-defendants at the same time. I believe he did, Your Honor, but I know he denied Mr. Osmond's originally, and that's cited, and that stuff's in the appendix. And the government says there's tension between what he said in those two denials and what he said in this award. Well, Your Honor, I don't disagree that there's tension, but that's not the issue before the court. The issue before the court is, did he abuse his discretion? And the government... The crime of the facts of the... No, no, I mean what happened in the Gulf... Oh, no, no, certainly not. The offense conduct did not change. The offense conduct did not change, but... And look, I think the government is being aggressive, is what they should do, but if you look at their brief, they would have you believe that Judge Jackson, between 2021 and 2023, you know, became, you know, he relied just on rehab. They say that in their brief at 34. That's not correct. He's using... Can I ask you, I have the other concern. So do you agree with your friend on the other side that under this court's precedent, this is a two-step analysis? I think it's a multi-step analysis, but... This court has literally repeatedly said this is a walk through the implications of that. Because it's a two-step analysis, it does not matter how much the 3553 factors favor a defendant unless there are extraordinary and compelling circumstances. The district court cannot grant compassionate release unless there are... Like in the absence of an extraordinary and compelling circumstance, it literally doesn't matter how much the 3553 factors favor the defendant. District court can't grant compassionate release. Do you agree with that? I agree that the court has ruled that way. Yes, Your Honor. Okay. And so here's a question. I mean this sincerely as a question. It's sort of a loaded question, but I mean it. I read the district court's opinion. Please complete the following sentence. The extraordinary and compelling circumstance found here by Judge Jackson is what? The extraordinary and compelling circumstances found here by Judge Jackson are his health... Those are just what Judge Jackson says about the 3553 factors. What is the extraordinary and compelling circumstance found by the... So you're saying the extraordinary compelling circumstance is all of the factors in his case taken in conjunction? Yes, sir. And I think if you look at 1.1B13, they talk about that... They list some like sexual abuse in prison and some specific things which obviously don't apply here, but the new and the old, the amended one is like you can look at everything. And while I agree it's a two-step process or two-step analysis, that doesn't mean that they have to be completely separate and that some of the factors can't apply to both prongs. I mean, I think the government's already... Okay. So fine. You said some of the but not extraordinary and compelling. As I read this opinion, it's literally a one-step analysis that says here's like seven factors, all of them support both prongs. Well, your honor, I would agree that the order doesn't suss them out between this, this, but I agree with what you just said. I think Judge Jackson's opinion read fairly and with the abuse of discretion standard in mind is he believes all the factors do apply to both prongs and there's nothing that prevents that. That's a... I guess that's a legal question because if we take our precedent as suggesting that it's a two-step analysis and when I asked the government, I don't necessarily disagree with you that there may be some overlap, but I think it's fairly clear that there's got to be something more on that first part of the analysis. And if all you've got is the district court judge continually harking back to the 3553A factors as justification for a finding of exceptional and compelling circumstances, why isn't that an abuse of discretion? Well, the reason I would say it's not abuse of discretion, your honor, is because that's the facts about the case, both when it occurred, the facts about the defendant, both when he was sentenced and what's happened since, the facts about the context. Judge King said stuff about the crime. So I don't... I understand the court's question, but I don't believe that there's any requirement that the court distinguish them. I mean, if there's a case that says they have to, in an order for it to not... If there's a case that says it's abuse of discretion, if in your order you don't distinguish, here's the list of compelling and extraordinary circumstances, and here's the list of 3553 factors, then I'm not debating that. But I've not seen that. That's not the way this is... I've seen a number of these orders, most of them... Can I go back to Judge Hyten's questions? And maybe it's not a fair one, and I'm not criticizing Judge Hyten's question. Criticize away. Because I think it's actually important. So, and maybe the answer is, in this case, there is no one compelling factor, but what in your mind is the most compelling fact that shows exceptional and compelling circumstances? Which is the strongest? In my mind, Your Honor, in my mind... Well, actually, I guess it doesn't matter what you think. What did Judge Jackson think? That's even a more difficult question. I know what Judge Jackson wrote, Your Honor. What Judge Jackson wrote, it seemed to me that Judge Jackson wrote about the entire context and fabric of the case, the defendant, the crime. There's not any one thing that stood out for Judge Jackson in your view. It was just... He didn't look... The way he wrote his order, it looked like to me he considered everything and they were all important. I don't think... He certainly didn't, in the order, say, well, this is the main factor and this is the most important number two factor. But I don't think that's what this is about. This is about looking at the entire context of everything and not being formulaic, not being... I mean, I've been... I'm older than my colleague and I've been up here for a long... And I've stood here, if I had a nickel for every time somebody said, counsel, it's abusive discretion, even if we don't agree with the judge, or even if we think the judge got it wrong or was too harsh, we're not here to judge that, right? We're here to say, is it within that broad discretion in that... But I guess as a person who said... In fairness, we, with some regularity, vacate district court sentences when the court didn't discuss a legally relevant factor, discussed a factor that's legally not relevant, doesn't make clear that it considered something. I mean, it's not like we don't vacate criminal sentences when district court judges don't do that. I mean, so can I ask you to respond to something the government says in the brief that did strike with me, which is to say, I read Judge Jackson's order and I don't see anywhere where he grapples with the fact that under this order, Mr. Osmond is literally the only person convicted of piracy who did not cooperate with the government who would have less than a life sentence, that literally every single other non-cooperator in the country has a life sentence except this person. And maybe there's a reason why this person should be the one pirate who doesn't get a life sentence, but I don't see sort of grappling with that problem, which strikes me as a problem. Well, Your Honor, I would, I don't, he didn't grapple with it in the order I would agree. Obviously, disparity of sentencing is a... 3553 factor? Is a factor, but in a mandatory life case, at the outset, there is no disparity because if you get convicted of what Mr. Osmond got convicted of, you get... to Mr. Osmond. I mean, I guess implicitly, are you aware of anybody else convicted of piracy who was granted compassionate release? I am not aware of anyone else, Your Honor, but I'm also not aware of who's, of everybody that's applied and what other cases I did. I was trial counsel on the, one of the other piracy cases in Norfolk a number of years ago, the one with the quest where, you know, they were seeking the death penalty for some people. I was in that case. I was not trial counsel in this case. So, I can't, I can't answer the disparity question other than to say in these cases, there's, there's, there's nothing really to compare it to unless you know what's come before you, because in every pirate case, the sentence out the box is life. And the nature of the piracy offense has not changed? No, sir. I would, I'm not here arguing that, that piracy, that the conduct that was engaged in this case wasn't piracy, but I do think what Judge Jackson is saying... Judge Jackson, did he talk about the fact that this, this fellow wasn't a ringleader? And that kind of thing? Well, yes, sir. If I could address that, because that was one of the points I wanted to make. I do think... He wasn't a ringleader. Well, I do think, though, with a minimum mandatory... Lucky didn't get killed. Yes, sir. They all were. I mean, they thought they were getting a tanker ship and they attacked a Navy ship. Yes, sir. I agree, but... The Navy was very cautious about how many shots they fired. Yes, sir. But I would say this, just because when the, one of the things about minimum mandatory sentences, as this court is well aware, it's driven by, if your conduct rises to the level that you're convicted, you get the same sentence, whether in a factual sense, you're the least culpable to meet that standard or the most culpable. That's what the law says. That's the law of piracy. That is the law of piracy. We decided that and we had to decide whether it was still good law. We said it was. They wrote it years ago. They wrote it in 1700s and then they mended it just a little bit in 1919, I think it was. Yes, sir. But it's still the same law. If you get convicted, if you commit piracy, you go to prison for life. Well, yes, your honor, at the sentencing, but when you get to... At one point, Judge Jackson said, well, they didn't really commit piracy. And that was ruled on and I understand that. He reversed that. Right. So that's been retermined. What he did was piracy. Yes, sir. But to answer what this, I believe, is important here, that's correct. Coming out of the box, he got life. Piracy hadn't changed. What that does not mean, that when you get to the compassionate release stage, you can't consider his role, the context, the outcome, what he did within that. And I think that's what Judge Jackson was talking about. One of your honors asked my colleague, well, no property was taken. He didn't hurt anybody. He didn't shoot anybody. That doesn't mean he's not guilty of piracy. How is that mitigating, though? I don't understand why that's even relevant. Well, I mean, Judge Jackson made... And actually, it's actually not true because... Maybe I should give Judge Jackson the benefit of the doubt, but it's literally not true that no one was injured. There were at least a couple of his confederates. One was killed. Another one was severely injured. I misspoke. There was no one on the Navy vessel that was injured. The reason I think it's... That was luck. But they fired a grenade launcher and an AK-47 at the ship. They were lucky nobody in the American Navy was hurt. That's right. Yes, sir. And I want... Two of them, and they're lucky that all of them weren't killed, that were on the skiff. Yes, sir. I want to be clear. I'm not here defending piracy. I understand. I'm here defending Judge Jackson's... I've defended... I've done that, but that was a different rodeo. Can I ask you about... I know you're here as a court-appointed lawyer, and we need you, and you're doing a good job. So I'd fire you for sticking to your guns. Can I ask you about... So can I go back to, again, the circumstances of the offense? Those seem to me to be classic 3553 factors that a district court in a normal case would consider as part of an original sentence. But you agree with me that if Judge Jackson, at the original sentencing, had cited all those factors, none of the victims were killed, and all those factors. You agree that if Judge Jackson cited all of those at the original sentencing and purported to impose a sentence of less than life, we would have summarily reversed him because that's a legal error. Because when there's a mandatory minimum, that overrides 3553, right? Yes, sir. And I think... So that's the next question. Doesn't that then suggest to me that at compassionate release, if anything, in a mandatory minimum case, it is even more important to separate steps one and step two? Because if you allow the steps to collapse together, you're basically allowing the district court to do something that, had they done it at the original sentencing, would have been a legal error, right? So at the original sentencing, Judge Jackson could not have relied on the 3553 factors to impose less than a life sentence in this case. But then you're basically saying he can cite a whole bunch of 3553 factors, call them extraordinary and compelling, and then impose a sentence that he would not have been allowed to impose in the first instance. Well, yes, sir. I understand that... It's not a sentencing reduction statute. I understand that, Your Honor. If I might address your question the way I believe that it works and what this order reflects. You're absolutely right. No matter what mitigating factual things Judge Jackson found at the time of sentencing, based on the jury's verdict, he had to impose a life sentence. I agree with that. What that doesn't mean is that those factors aren't extraordinary and compelling. It just means Congress didn't care. But now we're at a different stage in the process. The law allows him to reduce a sentence. And a factor can be both a 3553 factor and extraordinary and compelling. And that's what he found in his discretion. And I am not... Well, I agree there's other factors. So let me ask you this. And I know this is not the facts. But if the only basis on which Judge Jackson granted compassionate release were the nature and circumstances of the offense and the severity of the sentence... I realize he gave other reasons, but imagine those are the only reasons he gave. That can't be right. Because then that would allow a district court to literally use compassionate release to evade a mandatory minimum anytime it wants to. Yeah, I would agree. If there was an order that said the only thing that I'm basing this on has nothing to do with the defendant's post-conviction conduct, his family circumstances, his health, his rehabilitation. All I'm saying is these factors. But that's not what we have here. Well, can you talk about that? Because the government's response to the post-conduct rehabilitation is, yeah, he's doing a good job. But there's nothing compelling or extraordinary about that. Well, Your Honor, I would talk about that. This man learned English. Now, maybe some people would say... Did he not know any English? I didn't read that in there. Did he not know any English at all when he was... I don't want to talk outside the record, Your Honor. I don't know. Well, I talked to a lawyer. The record doesn't reflect that. That's right. The record doesn't show that he didn't know any English. But he did take English classes. We know that. I would point out to Your Honors that at the trial of this case, there were Somalian interpreters. Now, whether that shows he didn't know English or they... But your point's well taken. So, again, the government kind of says, well, he took a couple classes in 10 years. And I think what Judge Jackson's talking about in his order is, culturally, this person comes here. I think there's a language barrier. There's a huge cultural barrier. There's a huge conduct kind of how you barrier. And the idea that he has taken classes in English and bettered himself regardless of when he learned English, I think that that's something you can consider. And that's what I'm saying. This is a stew with a whole lot of ingredients in it. And you ask the question, what's the one thing? What's the most important thing? What's the biggest thing? My argument to this court would be, that's not what compassionate release is about. That's not what it was designed to be. You have an experienced judge who takes all of the ingredients and looks at them and weighs them. And you don't have to say, I'm giving this 10% weight and this 15% and this 12%. And Judge Jackson, the government says that he's making judicial policy and he's trying to solve old grievances and they put some stuff in their brief. He knows this case backward and forward. And I think the fact that he amended what he did or changed what he did in 2021 is not a negative. It's a positive. That's what we want from our judges. We want them to constantly reexamine things. And, you know, some... So you changed it really abruptly? Well, in two years. And look, some famous person... Let me say, Judge Jackson's a friend of mine. Well, I've had... He's a good judge. He's an excellent judge. I'm not criticizing. You go right ahead. Well, yes, sir. And I just say, you know, the government's argument about what he did before reminds me of the old saying that some poet, somebody said, foolish consistency is the hobgoblin of a small mind. We want our courts to reexamine things and look at things and make judgments about what comes before them in real time, not just say, hey, I did something a long time ago. I'm not going to look at it again. So far, I see my time is up, Your Honors. For all those reasons, I would ask you to confirm Judge Jackson's order. Thank you, Mr. Woodward. Mr. Tice, you have some rebuttal? Sure. This will be very brief, and I'll just start where Mr. Woodward left off. We obviously recognize, again, like I said when I began, that district courts have broad latitude and lots of discretion in granting or denying compassionate release motions and other sentence reduction motions. One of the ways district courts abuse their discretion, though, is to commit, to engage in arbitrary decision-making or reach decisions where they reverse themselves with no relevant change of facts or at least no real acknowledgment that they had said something else another time previously. If it was evident in the record why Judge Jackson said one thing at time one and another thing at time two, perhaps we wouldn't be here. It's not that circumstances can never change. But there are no material changes here that can explain the district court's dueling treatment of health conditions, family circumstances, rehabilitation. I mean, the district court looked at the same rehabilitation two years ago, said some evidence of rehabilitation. Looked at it two years later and said clear and evident. How it's not evident with respect why taking a couple of classes somehow means that you're rehabilitated of the offense of piracy. Can I ask you about something that didn't come up but I meant to ask you? What do we do with our decision in McCoy? I mean, that's a case where we reversed a district court's decision not to grant compassionate release under an abusive discretion standard. And we considered, I mean, so one of the government's arguments is we can't consider this stuff that's not new. Except in McCoy, we did, right? In McCoy, we considered the nature of the offense. Like, so I'm just going to throw this open in a question. What do we do about McCoy? So McCoy, just to clarify, McCoy affirmed, we appealed in McCoy. Sorry, we affirmed, sorry. It was me. I apologize. And this court- Isn't there a case, maybe I'm getting the cases mixed up. Isn't there a case recently where we reversed? A grant of compassionate release? It wasn't a grant of compassionate release. I'm confusing myself. Sorry, please continue. There is a case, there is a relatively recent case in Southern Malone or Mongarella, which says that a district court erred in basically like walling itself off from health factors, saying that he couldn't consider them in the 3553 analysis because it had already considered them or assumed, arguendo, that they were extraordinary and compelling. That might be what your honor is referring to. And this court said that the court should have considered them and that he erred and that the district court erred in not considering health factors. That's kind of a variation of what we have here. Sorry, I'm a thousand percent wrong about the name of the case. That is 100% of my problem. Brown, our decision in Brown. Sure. What do you do about that? I'm not sure Brown has any bearing on this case. I mean, the real issue in Brown had to do with stacking of 924C claims. This court concluded that Brown, Judge Dumar, erred in not granting release. It took an extraordinary step of compelling... But we specifically looked at the nature and circumstance of the original offense too, right? No, I don't think the court did actually. The court just looked at disparity, the sheer existence of a disparity pre and post the First Step Act and concluded that the district court erred in not granting compassionate release. I think, to be frank, I think that that decision is out of step with McCoy itself, which takes a more holistic... We have to say we decided it. Sure, but more broadly, I mean, you know, where McCoy is even arguably applicable here would be with respect to the nothing stolen, no one injured argument. But as, you know, Judge Davis and the Hassan decision, which is in the joint appendix, explain McCoy is easily distinguishable because the theory of McCoy is that district courts can redress through compassionate release gross disparities when there's a relevant change in law. And just for the court... Remind me, what's the relationship between a mandatory minimum sentence and a compassionate release situation? I mean, our position is, as we said in our brief, and as I told Judge Heitens before, just... I know what you're reminding me. That's the reason I said. Just because there's a mandatory minimum doesn't mean a defendant can't get compassionate release. And McCoy is an example. So what we have here is a mandatory minimum of life. That's right. He's eligible for something, maybe. If he can show extraordinary and compelling reasons, he would be eligible to have his... And the government acknowledges that. Sure, but it can't be... He can't point to the sheer existence of, hey, my sentence, my conviction has a life sentence. And I think that's disproportionate because I didn't hurt anyone and nothing was stolen. That may make it tougher. I think it does. And I think, obviously, when you're dealing with a mandatory minimum, that commands a life sentence for all manner of violations of piracy, even where nothing was stolen and no one was injured. I think that ups the ante a little bit for a district court to explain itself, especially with respect to disparities. Because, again, this is Congress's decision to apply this penalty to a wide swath of conduct. And as we pointed out in our brief, there's no defendant other than those that cooperate that do not have a life sentence. I see my time has expired, Your Honors, but... Thank you, counsel. As Mr. Woodward, as Judge King indicated, you are court appointed. And as he also indicated, and it's obviously very true, we can't do the work that we do without lawyers who are willing to take on what are often very difficult and challenging cases. We really very much appreciate your service in this case. Thank you, Your Honor. And I also appreciate the government's argument, as I think we all do. We're going to come down in Greek counsel and move on to our second case. Thank you.
judges: Albert Diaz, Robert B. King, Toby J. Heytens